*151 On Rehearing
MOISE, Justice
(dissenting).
The majority opinion on rehearing is based upon the assumption that Mrs. Dumser, the .plaintiff, did not waive her right under the contract involved. That is exactly the position taken in this dissent, as hereinafter shown. “Modus et conventio vincunt legem” — The form of agreement and the convention of parties overrule the law. Both parties are bound by what they have solemnly covenanted. The contract involved is supposed to be commutative, but it is unilateral in form. The trial judge who heard and saw the witnesses, dismissed the plaintiff’s demands.
Since the contract of August 11, 1948 is the law of the case, we will briefly set out its pertinent provisions:
The contract price is $28,200, to be made in five payments.
The third, fourth and fifth payments are of great importance:
“Third payment of $6,000.00, to be made when house is plastered and zveqther boards placed.
■ “Fourth payment of $6,000.00, to be made when house is completed and accepted. . ■ _■ ■
“Fifth payment of $4,200.00, to be made 30 days after the said building and all work contracted for hereunder shall have been completed and accepted by the said party of the first part. * * * ”
The record shows that before the fourth payment stipulating for the contractual acceptance of the building was made, Mrs. Dumser and her son called a meeting on or about December IS or 20, 1948, with the contractor, at the office of the Continental Casualty Company, and, then and there, in the presence of three representatives of the Continental Casualty Company and the head of the bond department of Emory & Kaufman, Mrs. Dumser complained bitterly of the defects in the plaster and also enumerated various other defects in the construction. She requested the keys to the premises for the purpose of showing a proposed tenant through the house. After a heated debate, Mrs. Dumser stated that she accepted the structure “as is”. This acceptance was made without reservation. The testimony of Mr. Hoffman, the bond company representative, and the three representatives of the Continental Casualty Company, as well as the testimony of Mrs. Dumser herself, Verifies this fact. Later, however, in mitigation of the admitted acceptance, Mrs. Dumser urged that she did accept the structure and did so under duress and without waiving the defects in the construction. In accepting, she specifically said that she would “swallow the plaster”.
.The majority opinion on rehearing inadvertently classifies Mrs. Dumser’s excuse for the unqualified acceptance as a restrictive one, and erroneously states that her ex *153 cuse is a special defense on the part of the contractor, and that the contractor must prove that her unrestricted acceptance was a qualified one as to defects. It was the duty of the plaintiff to make herself clear, which defendant says she did. She further urges that the alleged defects were unknown to her, and without her bearing the burden of proof, this statement is accepted as proof as strong as truth of Holy Writ. Many authorities are cited to bolster this contention. They are not apposite because they are not supported by the facts in the instant case.
On page 5 of her testimony, Mrs. Dumser stated that
“The plaster was cracked. It was breaking and falling off the rooms, and in my bathroom downstairs it is all cracked, * * *.
“The painting is all coming off. It is falling off the plaster in every room * * * «
And then, she was asked:
“Did you notice these things before you moved into the house, Mrs. Dumser?”
She replied:
"Yes, I did * *
The defects were known before she moved into the house and Mrs. Dumser swears •she moved into the house one day after the .fourth payment was made, which was on January 7, 1949. No wonder, the district judge, who saw and heard the witnesses, •dismissed plaintiff’s demands.
Further, Mrs. Dumser admitting that she accepted the house “as is”, says, she did so under duress, in order to get the keys. This acceptance relates back to the time she got the keys, which was at the time of the first meeting — On December 15 or 20, 1948— and before the fourth payment on January 6, 1949.
It is hard to see how duress could have been exercised, because this contract is unilateral in form, if ever there existed a unilateral contract. Under its terms, the owner had the right
(1) To name an architect of her own selection, in case of dispute as to workmanship, plans and specifications, and his decision would be final;
(2) The contract was to be completed by December 31, 1948, or, upon his failure to so do, the contractor was to pay demurrage; and
(3) On each of the payments to be made by the owner, a certificate was to be obtained from the architect selected by the owner showing that the work had been done in strict accordance with the plans and specifications, and that the payments were properly due.
We presume that this procedure was followed when the third payment was made, “when the plastering had been completed and the weather boards placed”, and we take it that the meeting at the bond company’s office was called because Mrs. Dumser realized that, when the fourth payment was *155 made, such constituted an acceptance under the very terms of the contract.
Another provision of plaintiff’s contract is that, if the contractor failed or refused to follow the plans and specifications, or to comply with any part of his contract, the owner had the right to enter upon and take possession of the premises and at once terminate the contract, and the owner alsp had the right to do the work, make the repairs, and deduct the costs thereof from the contract. This is strong corroborative proof of defendant’s defense.
Then again, another unusual provision of this contract compels the contractor to guarantee the workmanship and the materials furnished by the materialmen for one year. The guaranty clause reads:'
“Unless otherwise called for, all materials and workmanship shall be guaranteed for a period of one year starting from the date of acceptance of the contract.” (Italics mine.)
The contract was accepted on August 11, 1948. This suit was filed on December 30, ,1949, sixteen months after the acceptance of the contract and nearly five months after the guaranty clause of one year expired. These are the cold tomb stone facts of record in refutation of plaintiff’s contentions. The law of every case' must relate to the facts thereof. •
It is further contended that by the filing of a reconventional demand, which pointed out almost the identical defects as- urged before the plaintiff moved into the house, and now again urged in this suit, interrupted prescription. We are dealing with the guaranty clause of the contract by which the parties bound themselves) and the plaintiff, naturally, cannot extend the guaranty period' of one year beyond the time fixed in her contract of one year. The plaintiff voluntarily dismissed her reconventional demand. If it were a matter of prescription, such would not interrupt. Elliott v. Brown, Executor, 13 La.Ann. 579.
It is true, plaintiff dismissed her demand with reservation, but we must take all of the facts into consideration — this could not possibly mean anything more than the reservation of the rights granted under the contract mutually agreed upon.
The majority opinion on rehearing states —“This clause [the guaranty clause] does not deal with prescription of actions but merely guarantees the materials and workmanship for a period of one year from the date the building is accepted.”
The foregoing statement may establish a dangerous precedent. The guaranty clause of the contract as to material and workmanship was for only one year, and yet, the decision declares that this plaintiff can bring her suit any time after the defects are discovered within the year. We do not know whether this means the application of prescription of one year or whether it means the, prescription of ten years on this contract, and, if so, there will be dangerous consequences as to all'construction work in *157 this community, and every contractor will have to carry a bond for a period of ten years, provided notice has been given to him of certain defects in the building.
Feeling that the judgment of the district court is correct on the finding of facts, the judgment of the trial judge should not be disturbed. Originally, we affirmed that judgment. I am fully convinced, in the administration of justice, by due process of law, our affirmance of the'judgment should have been permitted to stand.
I respectfully dissent.